Vivian M. MYLES and B.K. Myles, Plaintiffs–Appellants,

v.

**GENERAL AGENTS INSURANCE COMPANY OF AMERICA, INC.,** Defendant–Appellee.

No. 99–1763.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 29, 1999.

Decided Nov. 30, 1999.

titled to underinsured motorist benefits under an insurance policy issued by General Agents to a third party. The district court granted summary judgment in favor of General Agents, and the Myleses appeal. We review the district court's grant of summary judgment *de novo*. *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 395 (7th Cir.1999). In doing so, we view the facts in the light most favorable to the Myleses as the nonmoving party. *Id.*

## BACKGROUND

In March 1996, Vivian Myles's 1983 blue Lincoln automobile became inoperable. At that time, Vivian was employed full-time as the manager of the paint department of the Terre Haute, Indiana Sears store. Vivian's brother, Richard Rench, who is now deceased, owned and operated a used car business, King Richard's Auto Sales. When Vivian's blue Lincoln became inoperable, Rench loaned Vivian a 1981 yellow Lincoln Town Car ("the yellow Lincoln") which he had been holding on his lot for resale. Rench had insured the yellow Lincoln under a commercial garage liability policy issued by General Agents ("the General Agents policy"). Neither Rench nor King Richard's Auto Sales were involved in the repair of Vivian's blue Lincoln.

On March 14, 1996, Vivian was involved in a serious automobile accident while driving the yellow Lincoln on her way home from work. As Vivian proceeded through an intersection in the yellow Lincoln, her car was struck on its side by a car driven by Charlotte Albert. Vivian's spine was injured in the collision, and she was forced to undergo surgery. Following the surgery, Vivian experienced continuing pain which prevented her from resuming her normal duties as manager of the Sears paint department, and she was transferred to the men's clothing department. Vivian's condition also required her to reduce her working hours from her pre-accident level of forty hours a week to fifteen hours a week. At the time of the accident, Vivi-

Robert F. Hunt (argued), Frey, Hunt, Hassler & Lorenz, Terre Haute, IN, for plaintiff-appellant.

Julie L. Michaelis, Wooden & McLaughlin, Indianapolis, IN, for defendant-appellee.

Before HARLINGTON WOOD, JR., MANION, and EVANS, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

Plaintiffs-appellants Vivian and B.K. Myles ("Vivian" and "B.K." respectively) filed this suit against General Agents Insurance Company of America, Inc. ("General Agents"), claiming that they were en-

an had been driving the yellow Lincoln for a few days and had used it solely for transportation to and from work. Following the accident, the yellow Lincoln was inoperable, and B.K. drove Vivian to work in his car until the blue Lincoln was repaired on May 9, 1996.

As a result of the accident, Vivian incurred approximately $30,000 in medical bills. Albert's insurance company awarded Vivian its policy limit of $25,000. The Myleses had allowed their own automobile insurance to lapse, and they sought additional recovery under the policy issued by General Agents to Rench. In December 1997, Vivian and B.K. filed this lawsuit, seeking monetary damages under the underinsured motorist provision of the General Agents policy. The district court granted summary judgment for General Agents, holding that Vivian was not an insured driver under the policy and, therefore, the Myleses were not entitled to underinsured motorist benefits under the express language of the General Agents policy. The Myleses filed this timely appeal.

## ANALYSIS

■ Summary judgment is appropriate where the pleadings, affidavits, and other materials on file demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Jurisdiction in the present case is based on diversity of citizenship under 28 U.S.C. § 1332, and the parties agree that Indiana substantive law governs. Indiana courts have recognized that "[c]onstruction of an insurance policy is a question of law for which summary judgment is particularly appropriate." *Piers v. American United Life Ins. Co.*, 714 N.E.2d 1289, 1290 (Ind.Ct.App.1999) (citing cases). The interpretation of "an insurance policy involves the same rules of construction and interpretation as other contracts." *Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 223 (Ind.Ct.App.1997) (citing

*Peterson v. Universal Fire & Cas. Ins. Co.*, 572 N.E.2d 1309, 1310 (Ind.Ct.App. 1991)). Summary judgment is appropriate "if, as a matter of law, it is apparent that extrinsic evidence is unnecessary to ascertain the meaning of the policy." *Id.* If an insurance policy's terms "are clear and unambiguous, the language of the policy must be given its plain and ordinary meaning." *Id.* (citing *Peterson*, 572 N.E.2d at 1311). The application of the unambiguous language of a contract to the undisputed facts of a case is a question of law. *Id.* (citing *Harden v. Monroe Guar. Ins. Co.*, 626 N.E.2d 814, 817 (Ind.Ct.App.1993)).

To be entitled to underinsured motorist benefits, Vivian must qualify as an "insured" under the General Agents policy. The policy states that, with some exceptions that are inapplicable to the present case, drivers using a "covered auto" with the policy holder's permission qualify as "insureds." The policy gives the policy holder the choice of several levels of "covered auto" classifications ranging from "any auto" to specifically limited classes of automobiles. The premium payment varies depending on the comprehensiveness of the "covered auto" classification chosen. In the instant case, Rench elected coverage under the description of covered auto designation number 32. Section 32 expressly provides:

> a covered "auto" does NOT include any "auto" which is:
>
> .    .    .    .    .
>
> 5. Furnished for the regular use of any person or organization unless the person or organization and the driver of the "auto" is specifically described in ITEM NINE of the Garage Coverage Form–Auto Dealers' Supplementary Schedule. Coverage shall extend to the occasional use by a non-scheduled driver for emergency purposes if (a) the non-scheduled driver has permission of a scheduled driver and the actual use is within the scope of such permission and (b)

the nonscheduled driver is 21 years of age or older.

The Myleses concede that Vivian was not listed as a scheduled driver under Item Nine; however, they argue that she nevertheless is entitled to coverage based on three alternative theories. The Myleses first contend that the term "regular use," which is not defined in the policy, is ambiguous and should be construed against the insurance company as drafter of the policy. They further assert that even if the term is unambiguous, Vivian was not a regular user as the term is used in the policy. Finally, the Myleses contend that even if Vivian was a regular user, she was also an occasional user for emergency purposes and, therefore, expressly entitled to coverage.

■ "A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation." *Piers*, 714 N.E.2d at 1290 (citing *Orkin Exterminating Co., Inc. v. Walters*, 466 N.E.2d 55, 60 (Ind.Ct.App.1984)). There is no requirement that each and every term in an insurance policy be defined to avoid ambiguity. *Smith*, 681 N.E.2d at 223. Furthermore, a term is not ambiguous merely because a controversy exists in which the parties each favor a different interpretation. *Id.* In *Smith*, the Indiana Court of Appeals examined the possible ambiguity of the term "regular use" in an automobile insurance policy. *Id.* The *Smith* court utilized the dictionary definition of regular, defining it as " 'recurring, attending, or functioning at fixed or uniform intervals ... constituted, conducted or done in conformity with established or

prescribed usages, rules or discipline.' " *Id.* (citing WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY, 992 (1985)). Applying this definition to the present case, we find no ambiguity. The express exception from the regular use exclusion for occasional emergency use is not inconsistent with this definition of regular use, and its inclusion does not create an ambiguity in the policy.[1]

■ Finding no ambiguity, we must apply the plain meaning of the contract language to the undisputed facts of this case. *See Smith*, 681 N.E.2d at 223. The Myleses contend that Vivian qualifies as an insured under the General Agents policy because Rench did not furnish the yellow Lincoln for her regular use. For support, the Myleses point to testimony that Vivian had used the car only to drive to and from work for a few days before the accident. This type of use is clearly routine. However, the Myleses assert that the Indiana Court of Appeals in *Smith* held that, in order to constitute regular use, a vehicle must be furnished at recurring or uniform intervals and argue that, in the present case, Vivian had only been provided the car for this one period following the breakdown of the blue Lincoln. The Myleses read *Smith* too broadly. In *Smith*, the plaintiff argued that in order to constitute regular use of the vehicle, the vehicle in question would need to always be available for his use. *Id.* at 223 n. 1. The court held that constant use was not required and that use at recurring or uniform intervals was sufficient. *Id. Smith* in no way requires multiple periods of use. Furthermore, *Smith* recognizes that regular use need not be unrestricted. The plaintiff in

---

1. The Myleses argue in their reply brief that, under the district court's approach, "no test driver of a vehicle held by Rench for sale would ever be covered under this policy, unless Rench had some emergency need for the test drive to occur." This argument is inconsistent with the express language of the General Agents policy. A vehicle held by Rench for sale that is merely offered for test driving would not constitute a vehicle "furnished for the regular use of any person" under the plain meaning of the terms in section 32 and,

therefore, would not be exempted from the covered auto classification. There would be no need to reach the emergency exception to the provision. The General Agents policy expressly states that auto dealership customers who are using a covered auto with the policy holder's permission do not qualify as insureds unless they have no other available insurance or unless their available insurance is "less than the compulsory or financial responsibility law limits."

*Smith* was allowed to use the automobile in question, a delivery vehicle owned by his employer, only while working. *Id.* at 221. Despite this restriction and the fact that Smith did not use the vehicle for personal business, the Indiana Court of Appeals found him to be a regular user of the vehicle. *Id.* at 223. Similarly, we find Vivian's use of the yellow Lincoln as transportation to and from work on a routine and recurring basis over the course of several days to fall within the scope of the regular use exclusion in section 32 of the General Agents policy.

Finally, the Myleses argue that, even if the yellow Lincoln was provided for Vivian's regular use, she was also an occasional user for emergency purposes and therefore entitled to coverage under the express emergency exception to the regular use exclusion. In the present case, we need not determine whether one can be an occasional user of a car that is furnished for regular use because Vivian's use clearly fails to qualify as use for emergency purposes. The Myleses argue that Vivian's need to have a car to drive to and from the Sears store daily for work constituted an emergency circumstance. This argument is unpersuasive. Even under the Myleses' proffered definition of emergency purposes, "for use in case of sudden necessity," it is clear that Vivian's use of the car to drive to and from work fails to qualify. Assuming that it was necessary for Vivian to use the yellow Lincoln to get to work, there is no evidence that the necessity was sudden. The Myleses concede that Vivian had been using the car to get back and forth from work for a few days before the accident. Vivian is not entitled to coverage under the emergency use exception to the regular use exclusion.

## CONCLUSION

Applying the unambiguous language of the General Agents policy to the undisputed facts of this case, it is clear that Vivian does not qualify as an insured under the policy. The Myleses, therefore, are not entitled to underinsured motorist benefits under the policy. The district court's grant of summary judgment in favor of General Agents is AFFIRMED.